DECHERT LLP
  Robert A. Cohen
  Charles I. Poret
  Joshua I. Sherman
  (robert.cohen@dechert.com)
  (nml@dechert.com)
1095 Avenue of the Americas
New York, New York 10036
Tel. (212) 698-3500
  *Attorneys for Plaintiff NML Capital, Ltd.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------x
| | |
|---|---|
| NML CAPITAL, LTD., | 03 Civ. 8845 (TPG) |
| | 05 Civ. 2434 (TPG) |
| Plaintiff, | 06 Civ. 6466 (TPG) |
| | 07 Civ. 1910 (TPG) |
| v. | 07 Civ. 2690 (TPG) |
| | 07 Civ. 6563 (TPG) |
| THE REPUBLIC OF ARGENTINA, | 08 Civ. 2541 (TPG) |
| | 08 Civ. 3302 (TPG) |
| Defendant. | 08 Civ. 6978 (TPG) |
| | 09 Civ. 1707 (TPG) |
| | 09 Civ. 1708 (TPG) |

---------------------------------------------------x


**PLAINTIFF NML CAPITAL, LTD.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO COMPEL BANCO DE LA NACIÓN ARGENTINA
<u>TO PRODUCE DOCUMENTS IN COMPLIANCE WITH SUBPOENA</u>**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ...................................................................................................... 2

    A.    BNA ............................................................................................................... 2

    B.    NML'S SUBPOENA AND BNA'S OBJECTIONS ............................................. 3

ARGUMENT ................................................................................................................................. 6

    I.  NML IS ENTITLED TO THE INFORMATION SUBPOENAED FROM BNA RELATING TO ARGENTINA'S PROPERTY WORLDWIDE ............................................................................................... 6

    II.  BNA MAY NOT RELY ON FOREIGN LAW IN ORDER TO AVOID ITS DISCOVERY OBLIGATIONS .................................................... 9

    III.  BNA FAILS TO DEMONSTRATE THAT THE SUBPOENA IMPOSES ANY UNDUE BURDEN ............................................................... 11

CONCLUSION ............................................................................................................................ 13

## TABLE OF AUTHORITIES

## CASES

*Alfadda v. Fenn*,
    149 F.R.D. 28 (S.D.N.Y. 1993) ....................................................................................9

*Banco Central De Paraguay v. Paraguay Humanitarian Foundation, Inc.*,
    No. 01 Civ. 9649, 2006 WL 3456521 (S.D.N.Y. Nov. 30, 2006) ......................................7

*Bridgeport Music Inc. v. UMG Recordings, Inc.*,
    No. 05 Civ. 6430, 2007 WL 4410405 (S.D.N.Y. Dec. 17, 2007)....................................13

*British Intern. Ins. Co. Ltd. v. Seguros La Republica, S.A.*,
    No. 90 Civ. 2380, 2000 WL 713057 (S.D.N.Y. June 2, 2000)...................................7, 9

*Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum*,
    105 F.R.D. 16 (S.D.N.Y. 1984) ......................................................................................10

*In re DG Acquisition Corp.*,
    151 F.3d 75 (2d Cir. 1998).................................................................................................9

*First City, Tex.-Houston, N.A. v. Rafidain Bank*,
    281 F.3d 48 (2d Cir. 2002)............................................................................................ 7-8

*Griffin Industries, Inc. v. Norfolk L.P.*,
    No. 08 Civ. 8489, 2009 WL 3097205 (S.D.N.Y. Sept. 28, 2009) ...................................10

*Gucci America, Inc. v. Curveal Fashion*,
    No. 09 Civ. 8458, 2010 WL 808639 (S.D.N.Y. Mar. 8, 2010) .......................................10

*Jacoby v. Hartford Life and Acc. Ins. Co.*,
    254 F.R.D. 477 (S.D.N.Y. 2009) ....................................................................................13

*Minpeco, S.A. v. Hunt*,
    No. 81 Civ. 7619, 1989 WL 57704 (S.D.N.Y. May 24, 1989)..........................................7

*Rubin v. Islamic Republic of Iran*,
    No. 03 C 9370, 2008 WL 192321 (N.D. Ill. Jan. 18, 2008) .............................................8

*Rubin v. Islamic Republic of Iran*,
    No. 03 C 9370, 2008 WL 2501996 (N.D. Ill. May 23, 2008) ..........................................8

*Schweizer v. Mulvehill*,
    93 F. Supp. 2d 376 (S.D.N.Y. 2000)......................................................................... 9-10

*Strauss v. Credit Lyonnais, S.A.*,
　　249 F.R.D. 429 (E.D.N.Y. 2008) ..................................................................................10

*Van Etten v. Mitsui & Co. (U.S.A.), Inc.*,
　　No. 09 Civ. 1071, 2010 WL 86138 (S.D.N.Y. Jan. 11, 2010) ................................... 11-12

*U.S. v. Vetco Inc.*,
　　691 F.2d 1281 (9th Cir. 1981) .......................................................................................9


**STATUTES AND RULES**

H.R. Rep. No. 94-1487 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604 ........................................8

Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 ...................................................................8

Rule 37 of the Federal Rules of Civil Procedure ............................................................................6

Rule 45 of the Federal Rules of Civil Procedure ............................................................................9

Rule 69 of the Federal Rules of Civil Procedure ............................................................................7

CPLR 5224(a-1) ...............................................................................................................................7

Plaintiff and judgment creditor NML Capital, Ltd. ("NML"), by its attorneys, Dechert LLP, respectfully submits this memorandum of law in support of its motion to compel non-party Banco de la Nación Argentina ("BNA") to comply with a June 14, 2010 subpoena served by NML on BNA (the "Subpoena").[1]

## PRELIMINARY STATEMENT

BNA is a state-owned Argentine bank, a principal function of which is to serve as a repository for the Republic of Argentina ("Argentina"). Argentina does almost all of its banking through BNA; as of March 2010, it held over $13.5 billion in deposits and other assets at BNA.[2]

This Court and others have held that NML is entitled to broad discovery with respect to Argentina's assets no matter where in the world they may be located. In light of its status as "Argentina's bank," there is no more appropriate target anywhere in the world for such discovery than BNA. Among other things, BNA almost certainly has information about where Argentina (through its various ministries and other integral parts of the Republic) is sending money to acquire goods; from where it is receiving money in exchange for the sale of goods or provision of services; and, where it has bank accounts outside of Argentina. Thus, NML served BNA with the Subpoena in order to obtain this information.

BNA refuses to comply with the subpoena on the basis of three objections – each of which is unavailing. First, BNA contends that NML is not entitled to discovery concerning Argentine assets located outside the United States. This objection flies in the face of both the

---

[1]  The Subpoena is attached as Exhibit A to the Declaration of Joshua I. Sherman, dated October 29, 2010 ("Sherman Decl.").

[2]  Report of Information on Financial Entities by the Central Bank of Argentina, Mar. 2010, Sherman Decl. Ex. U, at 131.

13859748

rulings of this Court, and of the law in the Second Circuit. Second, BNA claims that certain unidentified foreign laws *may* prohibit or restrict disclosure. But without both identifying the specific laws compliance with the subpoena would cause it to violate and demonstrating that those laws are likely to be enforced against BNA, this objection cannot stand. Third, BNA's argument that complying with the Subpoena is unduly burdensome because the computer systems of its branches and agencies outside Argentina are not linked with each other is implausible in the extreme. Indeed, even BNA's own website suggests that such computer systems are likely linked with BNA's main office. Even if BNA's branches outside of Argentina are not linked with BNA's main office, there are only fourteen such branches, and it would be a simple task for BNA to search for Argentine accounts in the fourteen locations – a routine task that all bank branches undertake regularly.

Therefore, NML respectfully requests that the Court reject BNA's obstructionist tactics and enter an order compelling BNA to comply with the Subpoena and produce the requested documents relating to the assets of Argentina, against which NML may seek enforcement of more than $2.3 billion in judgments and claims.

## FACTUAL BACKGROUND[3]

### A.  BNA

Non-party BNA is a state-owned Argentine commercial bank that was founded in 1891. Declaration of Juan Carlos Fábrega dated Oct. 28, 2008, Sherman Decl. Ex. K ("Fábrega Decl."), ¶ 2. According to BNA's website, its "principal objective is to act as financial agent for the

---

[3]  The factual and procedural history with respect to NML's claims, judgments and anticipated judgments against Argentina is well known to the Court.

[Republic]. In this capacity, it accepts official deposits and makes payments for account and by order of [Argentina]." Banco de la Nación Argentina, *About Banco Nación: Our History*, http://www.bna.com.ar/institucional/institucional_historia.asp, Sherman Decl. Ex. L.

BNA is headquartered in Buenos Aires and has over six hundred branches, agencies and other offices, only fourteen of which are outside Argentina, including a branch in New York City and an agency in Miami. *See* Fábrega Decl., ¶ 2; Banco de la Nación Argentina, *Subsidiaries in Other Countries*, available at http://www.bna.com.ar/pymes/py_internacionales_filiales.asp, Sherman Decl. Ex. N. BNA has over 2.5 million accounts maintained by all sorts of depositors, including individuals, major international corporations and the Republic itself. Fábrega Decl., ¶ 2. BNA has over eighteen thousand employees. *Id.*

### B. NML's Subpoena And BNA's Objections

On June 14, 2010, NML served the Subpoena on BNA seeking basic information about Argentina's property maintained at BNA in any branch, debts owed by BNA to Argentina, and flows of funds in and out of Argentina's accounts at BNA. Subpoena, Sherman Decl. Ex. A, at 6-7. This information is highly relevant to NML's enforcement efforts because any property that the Republic maintains at BNA is potentially subject to seizure by NML in the United States and elsewhere in satisfaction of its judgments and anticipated judgments against Argentina.

On June 28, 2010, BNA served general objections to the Subpoena, including:

- "BNA objects to the Subpoena on the grounds that it is overbroad in that it seeks documents about any property of Argentina maintained by BNA anywhere."

- "BNA objects to the Subpoena on the grounds that it seeks documents not relevant to the above-captioned actions insofar as it seeks documents relating to property located outside the jurisdiction of the Court and not being used for commercial activity within the United States as required by the FSIA, and therefore not subject to attachment, restraint or execution in these actions."

3

- "BNA objects to the Subpoena to the extent that the production of documents relating to accounts maintained at financial institutions would be prohibited under the laws of the jurisdiction where such records are maintained and would subject BNA to fines and penalties for violation of such laws."

- "BNA objects to the Subpoena on the grounds that it is unduly burdensome in that Banco de la Nación Argentina consists of more than 600 branches with operations in New York, Miami, Panama, Uruguay, Brazil, Venezuela, Spain, Paraguay and Chile and the Subpoena seeks to require non-party BNA to inspect and copy documents 'maintained at BNA anywhere' concerning property, assets and accounts in the name of or for the benefit of the Republic…."

- "BNA objects to the Subpoena to the extent it seeks to require BNA to produce documents or provide information not within its possession, custody or control." BNA Objections, Sherman Decl. Ex. B.

BNA also objected to, among other things, the Subpoena's definition of "Argentina," the types of electronic data that were sought, and the fact that the Subpoena requested information that is potentially confidential or proprietary. *Id.* On July 8, 2010, NML's counsel spoke with attorneys for BNA in an attempt to meet BNA's objections. Counsel for both sides thereafter exchanged seven letters and one e-mail during the meet-and-confer process. See Sherman Decl. Exs. C – J. NML ultimately revised its definition of "Argentina" in a manner that was acceptable to BNA by identifying the specific governmental entities, subdivisions and ministries encompassed by the term "Argentina." Letter from Joshua I. Sherman to Mark S. Sullivan dated July 20, 2010, Sherman Decl. Ex. G. NML also accepted BNA's proposal to narrow the scope of requested electronic data and agreed with BNA on the terms of a protective order that would apply to any documents produced. *Id.*; Letter from Joshua I. Sherman to Mark S. Sullivan dated July 26, 2010, Sherman Decl. Ex. I.

However, despite NML's efforts to reach a compromise, BNA was unwilling to withdraw its objections with respect to three issues:

(1) BNA takes the position that NML is not entitled to information concerning Argentine assets located outside the United States, despite the fact that the Court has already ruled on numerous occasions that Plaintiffs will be allowed reasonable discovery about Argentina's assets wherever they may be located around the world. *E.g.*, January 15, 2004 Tr., Sherman Decl. Ex. O, at 33-34 ("[W]here you've got … judgments issued in the Court, and the possibility of enforcing those judgments in a foreign country, I would think that there should be discovery here. … So, it would be my ruling that they are entitled, in principle, to reasonable discovery about assets in foreign countries.");

(2) Although it has not identified any specific laws that apply, BNA "*preliminarily identified*" nine jurisdictions – Argentina, Panama, Uruguay, Brazil, Venezuela, Spain, Paraguay, Chile and the Cayman Islands – that it contends "*may* prohibit or restrict the production of the types of information or documents requested in the Subpoena." Letter from Mark S. Sullivan to Joshua I. Sherman dated July 23, 2010 (emphases added), Sherman Decl. Ex. H;

(3) BNA maintains that the Subpoena is unduly burdensome because the computer systems of BNA's various branches, agencies and representative offices located outside Argentina "are not linked with *each other* so they are not able to access each other's records." Letter from Mark S. Sullivan to Joshua I. Sherman dated July 16, 2010 (emphasis added), Sherman Decl. Ex. F.  Thus, complying with the Subpoena would apparently require BNA to search for responsive documents at each of its foreign branches, agencies and offices.  Of course, according to BNA's website, there are only fourteen such branches, agencies and offices outside Argentina.  Banco de la Nación Argentina, *Subsidiaries in Other Countries*, *supra.*, Sherman Decl. Ex. N.  Moreover, NML had also asked BNA to confirm whether the computer systems of

5

these branches and agencies were linked with BNA's main office in Buenos Aires because, if these branches and agencies are indeed linked to BNA's main office, the purported burden of having to search for assets at each branch and agency – which is still a routine undertaking – would be non-existent because the searches would only need to be done once from BNA's main office.  Letter from Joshua I. Sherman to Mark S. Sullivan dated July 9, 2010, Sherman Decl. Ex. C.  However, BNA ignored this inquiry.

In light of BNA's unwillingness to reconsider these meritless objections, NML was left with no choice but to file this motion to compel.  For the reasons set forth below, NML respectfully requests that pursuant to Rule 37 of the Federal Rules of Civil Procedure, the Court order BNA to search for and produce the requested documents.

## ARGUMENT

**I.   NML IS ENTITLED TO THE INFORMATION SUBPOENAED FROM BNA RELATING TO ARGENTINA'S PROPERTY WORLDWIDE**

BNA's refusal to provide NML with information relating to property of Argentina located outside the United States contravenes rulings by this Court.  The Court has already held several times that NML is entitled to take discovery with respect to Argentina's assets wherever in the world they might be located. *E.g.*, January 15, 2004 Tr., Sherman Decl. Ex. O, at 33-34 ("[W]here you've got … judgments issued in the Court, and the possibility of enforcing those judgments in a foreign country, I would think that there should be discovery here. … So, it would be my ruling that they are entitled, in principle, to reasonable discovery about assets in foreign countries."); May 13, 2004 Tr., Sherman Decl. Ex. P,  at 13-14  ("I have expanded the discovery to include foreign countries."); February 2, 2005 Tr., Sherman Decl. Ex. Q,  at 46-49 (ordering Argentina to provide discovery regarding funds it transferred from the United States to

the Bank of International Settlements in Switzerland to shield them from execution by its creditors).

Even if the Court had not already ruled that NML is entitled to worldwide discovery with respect to Argentina's property, BNA's objection on the ground that the Subpoena seeks discovery concerning property located outside the Court's jurisdiction is nonetheless meritless. Judgment enforcement discovery is governed by Rule 69(a)(2) which explicitly permits discovery in "aid of the judgment or execution."[4] It is well-established that under Rule 69(a)(2), a judgment creditor such as NML "is entitled to discover the identity and location of any of the judgment debtor's assets, wherever located." *First City, Tex.-Houston, N.A. v. Rafidain Bank*, 281 F.3d 48, 49-50 (2d Cir. 2002) (quoting *Minpeco, S.A. v. Hunt*, No. 81 Civ. 7619, 1989 WL 57704, at *1 (S.D.N.Y. May 24, 1989)); *see Banco Central De Paraguay v. Paraguay Humanitarian Foundation, Inc.*, No. 01 Civ. 9649, 2006 WL 3456521, at *9 (S.D.N.Y. Nov. 30, 2006) ("[Plaintiff] is entitled as a judgment creditor, under Rule 69, to a very broad inquiry regarding the location and identity of the [defendants'] assets."); *British Intern. Ins. Co. Ltd. v. Seguros La Republica, S.A.*, No. 90 Civ. 2380, 2000 WL 713057, at *5 (S.D.N.Y. June 2, 2000)

---

[4] Rule 69(a)(2) also provides that a judgment creditor may obtain discovery as provided in the Federal Rules "or by the procedure of the state where the court is located." If NML subpoenaed the requested documents from BNA pursuant to New York law, BNA – which has a branch in New York – would be required to produce any responsive documents that are located within or outside New York. *See* CPLR 5224(a-1) ("A subpoena duces tecum authorized by this rule and served on a judgment debtor, or on any individual while in the state, or on a corporation, partnership, limited liability company or sole proprietorship doing business, licensed, qualified, or otherwise entitled to do business in the state, shall subject the person or other entity or business served to the full disclosure prescribed by section fifty-two hundred twenty-three of this article whether the materials sought are in the possession, custody or control of the subpoenaed person, business or other entity within or without the state.").

(ordering discovery concerning assets in Mexico because "[t]he fact that a judgment creditor may have difficulty reaching those assets is not determinative of relevance").

Although BNA also bases an objection to the Subpoena on the commercial activity exception to the Foreign Sovereign Immunities Act, ("FSIA") 28 U.S.C. § 1602, *et seq.*, the FSIA has nothing to do with the scope of discovery. *See Rubin v. Islamic Republic of Iran*, No. 03 C 9370, 2008 WL 2501996, at *1 (N.D. Ill. May 23, 2008) (the FSIA is "silent on the issue of discovery" and does not "contain[] any provision that discusses a party's entitlement to discovery"); H.R. Rep. No. 94-1487, at 23 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6621 ("The [FSIA] does not attempt to deal with questions of discovery."). BNA's objection based on the commercial activity exception is the result of BNA's having mistakenly conflated two very different concepts – whether an asset is within the scope of discovery and whether the asset is attachable in the United States. *See Rubin v. Islamic Republic of Iran*, No. 03 C 9370, 2008 WL 192321 at *15 (N.D. Ill. Jan. 18, 2008) (differentiating between the "substantive law of the FSIA … which defines the subset of [the sovereign's] assets that is susceptible to attachment or execution, [and] the federal rules of procedure, which define the scope of discovery to which the Plaintiffs are entitled"). The Second Circuit has made clear that asset discovery in a FSIA case is no different than in any case under the Federal Rules. *Rafidain Bank*, 281 F.3d at 54 (noting in FSIA case that "[d]iscovery of a judgment debtor's assets is conducted routinely under the Federal Rules of Civil Procedure"). Thus, BNA should be compelled to provide discovery with respect to Argentine assets no matter where such property is located.

## II. BNA MAY NOT RELY ON FOREIGN LAW IN ORDER TO AVOID ITS DISCOVERY OBLIGATIONS

BNA's reliance on some unspecified foreign laws to avoid its discovery obligations is also misplaced. By relying on foreign law, BNA "has the burden of showing that such law actually bars the production … at issue." *British Intern. Ins. Co. Ltd. v. Seguros La Republica, S.A.*, No. 90 Civ. 2370, 2000 WL 713057, at *8 (S.D.N.Y. June 2, 2000) (alterations omitted); *see also U.S. v. Vetco Inc.*, 691 F.2d 1281, 1289 (9th Cir. 1981) ("The party relying on foreign law has the burden of showing that such law bars production."). In order for BNA to satisfy that burden, it must provide "information of sufficient particularity and specificity to allow the Court to determine whether the discovery sought is indeed prohibited by foreign law." *Alfadda v. Fenn,* 149 F.R.D. 28, 34 (S.D.N.Y. 1993).

During the meet-and-confer process, NML asked BNA to identify the specific foreign laws that BNA contended might be violated by the production. Letter from Joshua I. Sherman to Mark S. Sullivan dated July 9, 2010, Sherman Decl. Ex. C. Not only did BNA refuse to identify any specific law that might apply (*see* E-mail from Mark S. Sullivan to Joshua I. Sherman dated July 12, 2010, Sherman Decl. Ex. D), but it also would not even identify the exact jurisdictions at issue. BNA only "preliminarily identified" nine jurisdictions in which such laws "may" apply. Letter from Mark S. Sullivan to Joshua I. Sherman dated July 23, 2010, Sherman Decl. Ex. H.

"Rule 45(c)(2)(B) … require[s] the recipient of a subpoena to raise all objections at once, rather than in staggered batches, so that discovery does not become a game." *In re DG Acquisition Corp.,* 151 F.3d 75, 81 (2d Cir. 1998) (considering party's objection to subpoena pursuant to Rule 45); *Schweizer v. Mulvehill*, 93 F. Supp. 2d 376, 412 (S.D.N.Y. 2000) ("Objections to a non-party subpoena are waived if not made within the time specified by Rule

9

45(c)(2)(B), that is, generally fourteen days."). Objections must also be specific, or else they are deemed waived. *See Gucci America, Inc. v. Curveal Fashion*, No. 09 Civ. 8458, 2010 WL 808639, at *3 (S.D.N.Y. Mar. 8, 2010) ("UOB N.Y. has not lodged any specific objections to the Subpoena's requests. Therefore, as a matter of law, UOB N.Y. has waived its objections."); *see also Griffin Industries, Inc. v. Norfolk L.P.*, No. 08 Civ. 8489, 2009 WL 3097205, at *1 (S.D.N.Y. Sept. 28, 2009) ("it is well-established that objections to discovery requests must be particularized"). Here, because BNA never identified the specific foreign laws it contends would bar production – despite having been afforded the opportunity to do so during the meet-and-confer process – it has waived its opportunity to do so now. BNA is therefore unable to meet its burden to show that producing the requested documents would be barred by any foreign law.

Even if BNA were permitted to and could in fact identify foreign laws akin to bank secrecy laws or blocking statutes that would purport to bar production, it is beyond debate that a "a foreign law's prohibition on discovery is not a bar to issuance of a discovery order." *Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.,* 105 F.R.D. 16, 27, 29 (S.D.N.Y. 1984). Even after a bank demonstrated both the illegality of producing the requested documents under French bank secrecy laws and that France had actually enforced its blocking statutes (which is rare), the Court nonetheless ordered production because the bank had not demonstrated "any likelihood that it [would] be pursued civilly or criminally" and because the bank's potential difficulties had been diminished by the protective order in place. *Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429, 454-55 (E.D.N.Y. 2008) (compelling production). Here, BNA has not stated in its objections or meet-and-confer letters that it would likely be prosecuted in any of the jurisdictions it identified, nor has it explained why the terms of the proposed confidentiality agreement on which it settled with NML do not offer adequate

10

protection.[5]   Therefore, BNA may not rely on foreign law in order to avoid its discovery obligations.

## III. BNA FAILS TO DEMONSTRATE THAT THE SUBPOENA IMPOSES ANY UNDUE BURDEN

BNA also complains that complying with the Subpoena would be unduly burdensome because, it contends, the computer systems of BNA's various branches and agencies (besides those located in Argentina) "are not linked with each other so they are not able to access each other's records" to search for accounts held in the names of the Argentine ministries and governmental subdivisions identified by NML.  Letter from Mark S. Sullivan to Joshua I. Sherman dated July 16, 2010, Sherman Decl. Ex. F.

When determining whether a subpoena imposes an undue burden, courts look at "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Van Etten v. Mitsui & Co. (U.S.A.), Inc.*, No. 09 Civ. 1071, 2010 WL

---

[5] This Court has already rejected another bank's argument that it could not produce documents relating to accounts held abroad because the disclosure would violate foreign law.  *See* May 28, 2009 Tr., Sherman Decl. Ex. R,  at 14 (rejecting assertion by Citibank that producing documents would cause it to violate Argentine law).  BNA has sought to distinguish the Court's ruling because the entity at issue in that particular case "was spiriting assets out of the United States" in order to avoid Argentina's creditors and, it contends, no such concerns exist with BNA.  *See* Letter from Mark S. Sullivan to Joshua I. Sherman dated August 2, 2010, Sherman Decl. Ex. J.  However, Argentina and BNA have already demonstrated their commitment to maneuver assets out of the grasp of Argentina's creditors.  *See The Government is protecting itself from attachment*, LA NACIÓN, Feb. 5, 2004, Sherman Decl. Ex. S (Argentina's former Cabinet Chief declared "that the assets of the country are safe from the threat of attachments requested by foreign creditors," and that "funds on deposit in the New York branch of [BNA] have been repatriated"); *Banco Nacion does not fear legal actions in other countries*, EL CRONISTA, Feb. 17, 2004, Sherman Decl. Ex. T (Former BNA President admitted that BNA has "taken every step necessary to ensure that no asset of the Bank is attached.").

86138, at *2 (S.D.N.Y. Jan. 11, 2010). Here, BNA does not object to the relevance or description of the requested documents, NML's need for them or the applicable time period. Its only argument seems to be that complying with the subpoena is unduly burdensome because it would have to conduct searches at each of its branches and agencies outside Argentina. BNA's argument is both implausible and, even if true, not enough to defeat a subpoena.

First, NML has asked, but BNA has been unwilling to disclose, whether it has the ability to search the computer systems of all of its worldwide branches and agencies from its main office in Buenos Aires. If such branches and agencies are in fact linked with the bank's main office, then BNA's contention that complying with the Subpoena would be unduly burdensome (because BNA would have to conduct searches at each branch and agency) should be rejected immediately. It would certainly be surprising to learn that BNA's computer systems at its branches and agencies around the world are not linked with its main office in light of the various statements on BNA's website concerning the bank's international operations and activities. For instance, BNA's website boasts that the bank "operates in international business and finance" and is involved in "international business development and foreign trade." *See* Banco de la Nación Argentina, *Subsidiaries in Other Countries*, *supra.*, Sherman Decl. Ex. N. BNA also maintains ATMs in Uruguay, Bolivia and Paraguay, *see* Banco de la Nación Argentina, *BNA Automatic Teller Machines in Other Countries*, available at http://www.bna.com.ar/bp/bp_pop_CajerosAutomaticosExterior.asp, Sherman Decl. Ex. M, and it is hard to imagine that BNA's computer systems in Argentina are not linked with those machines abroad.

Second, in the unlikely event that BNA's worldwide computer systems are not linked with its main office, BNA still fails to show that complying with the Subpoena would be unduly

12

burdensome. According to BNA's website, there are only fourteen BNA branches and agencies outside of Argentina. Banco de la Nación Argentina, *Subsidiaries in Other Countries*, *supra.*, Sherman Decl. Ex. N. The fact that a mere fourteen branches and agencies would each have to conduct the routine banking task of searching for accounts in the name of the Argentine ministries and governmental subdivisions identified by NML is hardly burdensome. Banks receive garnishment notices on a daily basis and are frequently required to search their records for accounts held in debtors' names. Thus, BNA's objections, which contain no specific details regarding the time or cost involved in conducting the requested searches, are inadequate. *See Bridgeport Music Inc. v. UMG Recordings, Inc.,* No. 05 Civ. 6430, 2007 WL 4410405, *1-4 (S.D.N.Y. Dec. 17, 2007) (enforcing subpoena where opposing party failed to carry its burden to "demonstrate that compliance with the subpoena would be unduly burdensome"); *Jacoby v. Hartford Life and Acc. Ins. Co.* 254 F.R.D. 477, 478 (S.D.N.Y. 2009) ("boilerplate objections that include unsubstantiated claims of undue burden … are a paradigm of discovery abuse").

## CONCLUSION

For the reasons set forth above, NML respectfully requests that the Court grant its motion to compel BNA to comply with the Subpoena.

Dated: November 1, 2010
       New York, New York

                                    Respectfully submitted,

                                    DECHERT LLP

                                    By: _____
                                    Robert A. Cohen
                                    Charles I. Poret
                                    Joshua I. Sherman
                                    (robert.cohen@dechert.com)
                                    (nml@dechert.com)
                              1095 Avenue of the Americas
                              New York, New York 10036
                              Tel. (212) 698-3500

                              *Attorneys for Plaintiff NML Capital, Ltd.*