UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

NML CAPITAL, LTD.,

                Plaintiff,

         -against-

THE REPUBLIC OF ARGENTINA,

                Defendant.

:  03 Civ. 8845 (TPG)
:  05 Civ. 2434 (TPG)
:  06 Civ. 6466 (TPG)
:  07 Civ. 1910 (TPG)
:  07 Civ. 2690 (TPG)
:  07 Civ. 6563 (TPG)
:  08 Civ. 2541 (TPG)
:  08 Civ. 3302 (TPG)
:  08 Civ. 6978 (TPG)
:  09 Civ. 1707 (TPG)
:  09 Civ. 1708 (TPG)

------------------------------------------------------------------------ X

EM LTD.,

                Plaintiff,

         -against-

THE REPUBLIC OF ARGENTINA,

                Defendant.

03 Civ. 2507 (TPG)

------------------------------------------------------------------------ X

## JOINDER BY THE REPUBLIC OF ARGENTINA IN MOTION TO QUASH THE SUBPOENA SERVED ON NON-PARTY JAIME CARUANA

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for the Republic of Argentina

Of Counsel:

Jonathan I. Blackman
Carmine D. Boccuzzi
Christopher P. Moore

Defendant the Republic of Argentina ("the Republic") hereby joins the October 21, 2010 motion of non-parties Jaime Caruana and the Bank for International Settlements (the "BIS") for the entry of an order quashing the subpoena dated October 5, 2010 (the "Subpoena") served on Mr. Caruana by plaintiffs NML Capital, Ltd. ("NML") and EM Ltd. ("EM").[1]

## BACKGROUND

This Court is already familiar with the background of the litigation between the Republic and plaintiffs EM/NML which gave rise to the Subpoena; accordingly, it will not be recounted again here. Mr. Caruana, the subject of the Subpoena served by EM/NML, is the General Manager of the BIS, an international organization which serves as "a bank for central banks" and is headquartered in Basel, Switzerland. *See* BIS Mot. Br. at 3-4. Earlier this month, he traveled to the United States to attend the annual meetings of the IMF and the World Bank in Washington, D.C., stopping en route in New York to speak at a financial conference. *Id.* at 5. On October 7, 2010, plaintiffs served Mr. Caruana with a subpoena at the conference, addressed to him in his capacity as General Manager of the BIS.

The Subpoena purports to compel Mr. Caruana to appear for a deposition in New York and to produce within 30 days in New York a wide range of confidential documents of the BIS. The Subpoena, spanning a time period of nearly two years, seeks to depose Mr. Caruana on all manner of topics relating to "all property and all accounts maintained at BIS in the name of, or for the benefit of, Argentina or BCRA." Mr. Caruana would be deposed on, *inter alia*, all debts owed by the BIS to Argentina or BCRA, transfers of property into or out of accounts at the BIS, all the accounts, intermediary accounts, counterparties, and intermediaries involved in such

---

[1] The Memorandum of Law in Support of Motion to Quash the Subpoena Served on Nonparty Jaime Caruana, dated October 21, 2010, is referred to as the "BIS Mot. Br." The Republic's accompanying declaration of Rachel Goldbrenner, dated November 3, 2010, is referred to as the "Goldbrenner Decl."

alleged transfers, the "nature and value of the property involved" and even – apparently

assuming omniscience on the part of Mr. Caruana and the BIS – the "purposes of such transfers."

*See* Subpoena, Ex. B to BIS Mot. Br.  The document requests are similarly overbroad, and would

require Mr. Caruana to produce confidential BIS documents and information.  *Id.*; see also BIS

Mot. Br. at 5.

At the same time that plaintiffs were serving Mr. Caruana in New York, they

purported to serve subpoenas in Washington, D.C. on high-ranking officials of the Banque de

France ("BDF"), the central bank of France, and Swiss National Bank ("SNB"), the central bank

of Switzerland, who were also visiting the U.S. to attend IMF and World Bank meetings.

Philippe M. Hildebrand, Chairman of the Governing Board of the SNB and a Member of the

Board of Directors of the BIS, was served on October 6 as he was leaving the diplomatic entry to

the United States at Dulles Airport.  Christian Noyer, Governor of the BDF and the Chairman of

the Board of Directors of the BIS, was served on October 8 as he arrived at his hotel in D.C.  The

subpoenas were substantially identical to the one purportedly served on Mr. Caruana, seeking

documents and information about property and accounts of the Republic or BCRA maintained at

the BIS or the BDF or SNB, respectively.  After the officials and their banks moved to quash the

subpoenas in the United States District Court for the District of Columbia on October 20 and 21,

citing a range of deficiencies under the Foreign Sovereign Immunities Act (the "FSIA"),

diplomatic immunity, comity, and other principles, plaintiffs indicated that they were

withdrawing the subpoenas.  Inexplicably, they have not done so with respect to the substantially

identical – and equally improper – Subpoena at issue before this Court.

## ARGUMENT

As explained in the BIS brief, the Subpoena violates Fed. R. Civ. Proc. 45 and is improper for various reasons, including the fact that the Court lacks jurisdiction over the BIS and that the Hague Convention prescribes the proper method of service. As the BIS brief discusses, and as is clear from the requests themselves, the Subpoena is also improper because it seeks information about purported assets and property held in bank accounts outside the United States and in doing so exceeds the bounds of the FSIA, which permits attachment only against property "in the United States" that is "used for a commercial activity in the United States." *See* 28 U.S.C. § 1610(a).[2]

The FSIA – which authorizes execution against the property of a foreign state only when such property is located in the United States and "used for a commercial activity in the United States," 28 U.S.C. § 1610(a) – provides the legal standard for determining the proper scope of discovery in aid of execution. *See* H.R. Rep. No. 94-1487, at 28 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6627;[3] *see also* Fed. R. Civ. P. 26(b)(1) (scope of discovery is limited to matters "that [are] relevant to any party's claim or defense"). Accordingly, assets not possibly subject to attachment or execution under the FSIA are not proper matters of discovery. *See, e.g.*, *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 486 (2d Cir. 2007) ("Because the record makes

---

[2]   Nor is the property targeted by the discovery requests attachable under Swiss law—as the BIS brief recounts in detail, the highest court in Switzerland has *already* denied plaintiffs' prior attempts to attach Republic and BCRA accounts held by the BIS, declaring that the BIS is immune from such process. BIS Mot. Br. at 6-8. This itself makes the attempt to use the processes of this Court to seek discovery about any alleged assets at the BIS utterly improper.

[3]   *See* H.R. Rep. No. 94-1487, at 28 ("The term 'attachment in aid of execution' [in § 1610(a)] is intended to include attachments, garnishments, and supplemental proceedings available under applicable Federal or State law to obtain satisfaction of a judgment. *See* Rule 69, Fed. R. Civ. P. The property in question must be used for a commercial activity in the United States.").

3

clear that the . . . [f]unds were never an attachable asset of the Republic and that § 1610's

commercial activity exception to immunity from attachment does not apply, [plaintiff] was not

entitled to any other discovery") (quotation marks and citation omitted); *Walters v. People's*

*Republic of China*, 672 F. Supp. 2d 573, 575 (S.D.N.Y. 2009) (granting motion to quash

subpoena seeking information about foreign sovereign assets; "discovery [must] correspond[] to

the FSIA's substantive reach") (citing *EM*, 473 F.3d at 486).[4]

        Consistent with these principles, this Court has not allowed blunderbuss discovery

of the kind demanded here. *See Seijas, et al. v. Republic of Argentina*, No. 04 Civ. 400 (TPG),

Apr. 30, 2008, Hr'g Tr. at 52:15-17 (Goldbrenner Decl. Ex. B) ("Even discovery has Foreign

Sovereign Immunities Act aspects. I cannot just order a foreign country to give discovery willy-

nilly."); *Lightwater Corp. Ltd. v. Republic of Argentina*, 02 Civ. 3804 (TPG), Dec. 19, 2006 Hr'g

Tr. at 31:21-25 (Goldbrenner Decl. Ex. A) ("I'm really not willing to allow discovery where I

think it is impossible at the end of the line to find any assets that can be executed from. I think

the law in the United States is that the courts have to be quite careful about not allowing

discovery against foreign sovereigns, right?"). Here, the requested discovery is improper both

because it demands discovery of property outside the United States that cannot be executed

---

[4]  *See also First City Tex. Houston N.A. v. Rafidain Bank*, 281 F.3d 48, 53 (2d Cir. 2002) (a state is subject to postjudgment asset discovery "to the extent those procedures and responsibilities are related to its commercial activities in the United States"); *accord Butler v. Sukhoi Co.*, 579 F.3d 1307, 1314 (11th Cir. 2009) (jurisdictional discovery against a sovereign and its agencies and/or instrumentalities should be "ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination") (citing *First City, Texas-Houston, N.A. v. Rafidain Bank*, 150 F.3d 172, 176 (2d Cir.1998)); *Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080, 1096 (9th Cir. 2007); *Rubin v. Islamic Republic of Iran*, 349 F. Supp. 2d 1108, 1112 (N.D. Ill. 2004) (denying discovery requests on the ground that the requests were not relevant to the subject matter of the action, which was "determined by the FSIA" to concern only a "foreign sovereign's property . . . used by the foreign sovereign in the United States for commercial purposes"). EM/NML cannot end-run these restrictions by a subpoena on a foreign non-party that is not itself subject to U.S. jurisdiction.

either under the FSIA or the law of Switzerland where it is located, and because – as detailed in

the BIS brief – it does so by unduly burdening a high-ranking official of a non-party international

organization. As Mr. Caruana and the BIS note in their brief, by seeking extensive information

about property not subject to attachment, the Subpoena exceeds the bounds of the FSIA and

Rules 26 and 45 and should be quashed. BIS Mot. Br. at 8.

**CONCLUSION**

For the foregoing reasons, and for the reasons stated by Mr. Caruana and the BIS

in support of their motion to quash dated October 21, 2010, the Subpoena should be quashed.

Dated: New York, New York
      November 3, 2010

                                  Respectfully submitted,

                                  CLEARY GOTTLIEB STEEN & HAMILTON LLP

                                  By: _____

                                        Jonathan I. Blackman
                                        Carmine D. Boccuzzi Jr.
                                        Christopher P. Moore

                                  One Liberty Plaza
                                  New York, New York 10006-1470
                                  (212) 225-2000

                                  Attorneys for the Republic of Argentina

5

## CERTIFICATE OF SERVICE

I, Carmine D. Boccuzzi, an attorney admitted to practice in the State of New York and a Partner of the firm of Cleary Gottlieb Steen & Hamilton LLP, hereby certify that:

On the 3rd day of November 2010, I have caused service of the Joinder by the Republic of Argentina in Motion to Quash the Subpoena Served on Non-Party Jaime Caruana, to be made by Federal Express and by electronic filing with the Clerk of the Court using the CM/ECF System, which will send a Notice of Electronic Filing to all parties with an e-mail address of record, who have appeared and consent to electronic service in this action.

Dated:   New York, New York
       November 3, 2010

                                                        Carmine D. Boccuzzi