UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------x

NML CAPITAL, LTD.,

                Plaintiff,

         – against –

REPUBLIC OF ARGENTINA,

              Defendants.

                                      **OPINION**

                                03 Civ. 8845 (TPG)
                                05 Civ. 2434 (TPG)
                                06 Civ. 6466 (TPG)
                                07 Civ. 1910 (TPG)
                                07 Civ. 2690 (TPG)
                                07 Civ. 6563 (TPG)
                                08 Civ. 2541 (TPG)
                                08 Civ. 3302 (TPG)
                                08 Civ. 6978 (TPG)
                                09 Civ. 1707 (TPG)
                                09 Civ. 1708 (TPG)

-----------------------------------------x

This opinion addresses legal questions on which the court ordered supplemental briefing in a hearing held on March 26, 2012.

The issue arises from a subpoena NML served on BNA on June 14, 2010, and the corresponding orders this court issued on September 2, 2011 and December 14, 2011.  BNA did not raise an objection to producing the documents based on foreign laws until January 6, 2012, when the December order to compel required BNA to fully comply with the subpoena.  A hearing was held on March 26, 2012, where the court indicated that BNA's failure to timely identify the foreign jurisdictions and laws which prevented it from

1

producing documents, presented a "terrible record."  Transcript of Oral

Argument at 20, <u>NML Capital v. Argentina</u>, (March 26, 2012) (03 Civ. 8845).

      During the March 26, 2012 hearing, the court also ordered

supplemental briefing on the issue of whether BNA's compliance with the

September and December 2011 court orders would violate the foreign

countries' laws which BNA raised in its January 2012 letter.  Given BNA's

delay in raising this objection, the court stated that "unless the language of the

opinion [BNA submitted on January 12, 2012], quoting local law, is very clear

that it would be a violation of BNA to comply with the order of this Court, this

Court will resolve the doubts in favor of NML, in view of the appalling record of

BNA's failure to really ripen this issue almost a year and a half ago at least."

<u>Id</u>. at 20.

      This opinion summarizes the timeline of events related to this discovery

dispute and analyzes the parties' arguments regarding foreign law.  In almost

all instances the foreign countries' laws allow the types of disclosure NML

Capital seeks if provided pursuant to a court order.  The disputed issue is

therefore whether this exception would include an order from this court or

whether it would need to be a court order from the foreign country's local

jurisdiction.  In all countries except Uruguay, BNA has failed to satisfy its

burden of proof in demonstrating that the exception does not apply to this

court's orders.  But regardless in all countries, including Uruguay, requiring

compliance with this court's orders is appropriate since the balance of applicable factors weighs in favor of disclosure.

## The Subpoena

The purpose of NML's subpoena was to "locate Argentina's assets and accounts, learn how Argentina moves its assets through New York and around the world, and accurately identify the places and times when those assets might be subject to attachment and execution (whether under [U.S. law] or the law of foreign jurisdictions." EML Ltd v. Republic of Argentina, 695 F.3d 201, 203 (2d Cir. 2012). Overall, NML sought to gain an understanding of Argentina's "financial circulatory system." Id.

The subpoena requests documents "relating to any assets or accounts maintained at BNA by Argentina or for Argentina's benefit, any debts owed by BNA to Argentina, and transfers into or out of Argentina's accounts, including documents identifying the transfer counterparties. Id. at 204. Argentina is defined to include "its agencies, instrumentalities, ministries, political subdivisions, representatives, State Controlled Entities . . ., and all other Persons acting or purported to act for or on behalf of Argentina." Id. The subpoena contained no territorial limitation.

## Timeline

- <u>June 14, 2010</u> – NML subpoenaed BNA.

- <u>February 10, 2011</u> – BNA submitted an opposition to NML's Nov. 2011 motion to compel. The reasons for opposition included that the subpoena sought information in violation of Foreign Sovereign

Immunities Act (FSIA), and compliance would violate Argentina's bank secrecy and data protection laws.

- September 2, 2011 – The court granted NML's motion to compel subject "to modifications as to details." The court was open to discovery of assets abroad, but wanted it limited to discovery that was reasonably calculated to lead to attachable property.  (NML agreed to modify the scope so as not to seek information concerning deposits in Argentina or intra-Argentina transfers, and eliminate from the definition of "Argentina" all natural persons except for sitting President Cristina Fernandez de Kirchner and her late husband, former President Nestor Kirchner).

- October 14, 2011 – The court denied Argentina's motion for a stay pending Argentina's appeal of the court's September 2, 2011 opinion and order.

- November 11, 2011 – The Second Circuit also rejected Argentina's motion for stay pending its appeal of the September 2, 2011 order.

- December 14, 2011 – Based on NML's motion, this court again ordered BNA to provide all documents responsive to NML's subpoena, as modified, on or before January 6, 2012.

- January 6, 2012 – BNA produced all records maintained in the US by BNA's New York Branch and its Miami Agency.  However, BNA did not include any records maintained outside the United States and told the court it is because outside counsel had informed it that disclosure of customers' confidential information is unlawful in those countries unless local courts grant authorization.

- January 10, 2012 – NML requested that the court hold BNA in contempt and that BNA be requested to pay a fine of $25,000 a day until it complies with the production order in full, and a compensatory sanction in the amount of NML's attorney's fees.

- January 12, 2012 – BNA for the first time identified specific foreign laws that it claimed prohibited it from fully complying with the production order.

- March 26, 2012 – This court held a hearing where it found that BNA's failure to raise these issues earlier presented a terrible record, but the court did not want to require production if doing so would violate foreign countries' laws.  The court asked NML to file supplementary briefs indicating which countries' laws it believed allowed the production and BNA would respond.  The court indicated that given BNA's bad behavior

"doubts will be resolved in favor of an order.  And unless the language of the opinion, quoting local law is very clear that it would be a violation of BNA to comply with the order of this Court, this Court will resolve the doubts in favor of NML, in view of the appalling record of BNA's failure to really ripen this issue almost a year and a half ago at least."  Transcript of Oral Argument at 20, <u>NML Capital v. Argentina</u>, (March 26, 2012) (03 Civ. 8845)

- <u>August 20, 2012</u> – In a decision cited earlier in this opinion, the Second Circuit affirmed this court's September 2, 2011 motion to compel discovery.  The Second Circuit found that the order did not infringe on Argentina's sovereign immunity under the Foreign Sovereign Immunities Act because the order only involved discovery, not the attachment of sovereign property, and the discovery is directed at third-party banks, not Argentina.

## Analysis

<u>Issue of Violation of Foreign Law</u>

Fed. R. Civ. P. 44.1 provides that "[a] party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other reasonable notice."  <u>See also</u> <u>Rationis Enters. Inc. of Panama v. Hyundai Mipo Dockyard Co.</u>, 426 F.3d 580, 585-86 (2d Cir. 2005).  In addition to providing notice, a party raising foreign law as a basis for objecting to discovery faces the burden of demonstrating that the foreign law actually prohibits producing the requested information.  <u>Alfadda v. Fenn</u>, 149 F.R.D. 28, 34 (S.D.N.Y. 1993); <u>British Intern. Ins. Co. v. Seguros La Republica, S.A.</u>, 90 Civ. 2370, 2000 WL 713057, at *8 (S.D.N.Y. June 2, 2000).  To satisfy that burden, the party must provide the court "with information of sufficient particularity and specificity to allow the Court to determine whether discovery sought is indeed prohibited by foreign law."  <u>Alfadda</u>, 149 F.R.D. at 34.  This includes providing "provisions of

foreign law, the basis for its relevance, and the application of the foreign law to the facts of the case." <u>Rationis</u>, 426 F.3d at 586.

Generally, sworn testimony or affidavits are preferable to support an argument that ordering discovery would violate foreign law. <u>Application of Chase Manhattan Bank</u>, 191 F. Supp. 206, 209-10 (S.D.N.Y. 1961) ("Sworn affidavits are safeguards of truth and accuracy."). However, a court is not bound by the sworn statements of experts, even if their opinions are not contradicted by the record. <u>Curtis v. Beatrice Foods Co.</u>, 481 F. Supp. 1275, 1285 (S.D.N.Y. 1980); <u>accord</u> <u>British Int'l Ins. Co. v. Seguros Law Republica, S.A.</u>, No. 90 Civ. 2370, 2000 WL 713057, at *7 (S.D.N.Y. June 2, 2000). An expert's "mere translation of a foreign statute without more, without background, without the context or the area of internal application is insufficient." <u>Application of Chase Manhattan Bank</u>, 191 F. Supp. at 210. Courts have accordingly rejected an expert's unsupported sworn opinion that a foreign country's law prohibits discovery, and ordered the party to produce documents located in the foreign country. <u>See e.g.</u> <u>First Nat'l Bank of N.Y. v. I.R.S. of U.S. Treasury Dep't</u>, 271 F.2d 616, 619-20 (2d Cir. 1959); <u>British Int'l Ins. Co.</u>, 2000 WL 713057 at *7.

Overall, BNA failed to give reasonable notice that it planned on raising foreign law as a basis for not complying with the subpoena. More importantly, BNA fails to satisfy its burden of demonstrating that foreign laws prohibit the required discovery in all countries, with the exception of Uruguay. Specifically,

6

BNA's expert opinions do not provide support for their assertions that an order from this court would not fall within the exceptions recognized in the countries' privacy laws.  Furthermore, the various countries' statutes do not specify that the exceptions apply only when a local court orders disclosure.  It is for these reasons that the court finds that with the exception of Uruguay, complying with this court's orders would not violate the various countries' laws.  However, even if disclosure violated the foreign countries' laws, as in the case of Uruguay, this court still orders disclosure due to the balancing of factors analyzed at the end of this opinion.

**Spain**

BNA's January 12, 2012 letter enclosed an unsigned letter from Rocca Ruben who stated that Spain's Law of Personal Data Protection (Law 15/1999) prohibited disclosure of information without the owner's express consent. However, BNA's response of July 13, 2012, concedes that this law only protects natural persons and thus is inapplicable to this case.

BNA's January 13 response instead relies on a different law, which it cites for the first time, Law 44/2002.  This law prohibits credit institutions from providing information about customers' balances or transactions to third parties.  However, this duty of confidentiality does not apply to information "capable of being disclosed to third parties . . . under law."  BNA maintains that "under law" is limited to an order from a Spanish Court.  NML argues that the court should not address this new argument because the court limited briefing

7

to addressing the justifications provided in BNA's January 12, 2012 submission.

NML is correct that the court requested limited briefing, stating that "unless the language of the *opinion* [BNA submitted on January 12, 2012], quoting local law, is very clear that it would be a violation of BNA to comply with the order of this Court, this Court will resolve the doubts in favor of NML." The fact that BNA did not cite Law 44/2002 until its reply on July 13, 2012 is troublesome given BNA's previous delay in citing any foreign law.  However, even if the court considers BNA's reply, it is insufficient to satisfy BNA's burden of demonstrating that Spain's law prohibits disclosure.  Although it is a sworn statement, it provides no support for its interpretation of "under law."  The statute itself does not specifically state that "under law" is limited to Spanish court orders.  This court therefore finds that there is insufficient evidence that Spanish law prohibits BNA from complying with this court's orders.

## Brazil

Attached to BNA's letter of January 12, 2012, are two letters from attorneys in Brazil indicating that disclosure of the requested information would violate Brazil's laws.  Both letters rely in part upon Article 39 of law no. 4.595.  But as NML argues and BNA later concedes, this law has been replaced by Lei Complementar No. 105/01.  BNA's reply maintains that Lei Complementar still prohibits BNA from disclosing information sought in the subpoena.

Article 1 of Law 105/2001 requires that financial institutions maintain secrecy regarding customers' transactions.  One exception allows financial institutions to disclose pursuant to a "judicial order."  NML submitted a sworn declaration from Antonio Neto, who asserts that this exception does not distinguish between an order from a foreign court and one from a Brazilian court.  BNA submitted a sworn statement from Rosamaria Barna who says that in her opinion "judicial order" refers only to an order from a Brazilian Court or a foreign order that is officially confirmed by Brazil's highest court.

Both parties cite a Brazilian case to support their interpretation.  The parties have provided a copy of this case and supplemental materials arguing over how to interpret it.  But it is not clear how applicable it is to the circumstances in this case, as the Brazilian case involved a letter rogatory where Italian prosecutors, without obtaining *any* court order – foreign or domestic – were seeking cooperation from Brazilian authorities in obtaining information located in Brazil.  Here NML is not seeking to use letters rogatory and not seeking the cooperation of Brazilian officials in obtaining the information sought, so it is not clear if and how the court's holding applies.

The opinion does not definitively support either party's argument, but overall it provides greater support for finding that the exception applies whether the court order is foreign or domestic.  Specifically, the opinion cites with support the part of Judge Dipp's opinion stating that "the breach of bank secrecy and the seizure of assets located in national territory may only be

9

obtained through a court order, even if originated from a foreign judge or court. It is not required that the decision be domestic, just that it be a court order." Statements suggesting that the exception only applies when a foreign court order has been confirmed in a Brazilian court appear to be addressed to the situation in which a party is seeking to have Brazil's courts enforce a foreign judgment – that is not the situation in this case.

Accordingly, this court finds that there is insufficient evidence that Brazil's laws prohibit BNA from complying with this court's orders.

## Bolivia

BNA's letter dated January 12, 2012, included an unsigned letter from Luis F. Calvo Moscoso who states that international law requires the United States to ask for "assistance of international jurisdiction" before it "instruct[ed] the conduct of an act by a national of a different State."  Letter from Luis F. Calvo Moscoso (December 27, 2011).  Moscoso further states that Law No. 1488 enacted through Decree D.S. 26581, under Title VI, Chapter I, Art. 86 provides that financial institutions must not disclose information regarding financial transactions without the owner's consent.  Id.  One exception allows financial institutions to disclose information "under well-founded Court Order, which must be addressed to the Banks and Financial Institutions Monitoring and Supervision Authority."  Id.  Moscoso maintains that the exception requires that the request for information proceed through Bolivian courts.

NML challenges Moscoso's arguments by stating that he ultimately provides no support for his contentions.  First, NML argues that international law does not prohibit the United States federal courts from requiring foreign citizens to obey its orders when jurisdiction is proper under 28 U.S.C. § 1332(b)(2)-(3).  Second, NML argues that Moscoso provides no citations for the assertion that a "well-founded Court Order" is only one addressed to a Bolivian banking authority.

BNA's response does not contest that a United States federal court with proper jurisdiction can order foreign citizens to obey its orders.  Instead, Moscoso simply relies upon Law No. 148.  Moscoso again states without support that a foreign court order does not fall within the "well-founded court order" exception until the Supreme Court of Bolivia makes such a determination.  Accordingly, Moscoso claims that in order for the exception to apply, a foreign court order needs to be submitted through the Supervisory Authority of the Financial System.

Ultimately, because BNA's submissions fail to provide any basis for its claim that a "well-founded court order" is only one that is submitted to the Supervisory Authority of the Financial System, this court finds that BNA would not be violating Bolivia's laws by producing documents pursuant to this court's orders.

11

**Chile**

BNA's January 12, 2012 letter includes an unsigned statement from Marcos Farello, who claims that Chilean Courts have exclusive jurisdiction over assets or information located in or accessible from Chile.  Farello therefore argues that it is not possible to enforce a foreign court's order in Chile.  This argument is insufficient because there is no support or citation.  It is also irrelevant since NML is not seeking to have Chilean courts enforce this court's order.

BNA's reply memorandum includes a signed declaration by Gianella Jara who argues that Article 154 of Chile's General Bank Act prohibits disclosure. This act prohibits financial institutions from disclosing information about their customer's "deposits or other moneys in transactions of any nature."  One of the exceptions is that "ordinary and military courts may, for the purposes of actions pending before them, order the submission of information on specific transactions directly related to the proceedings, on deposits, moneys received or other transactions of any nature conducted by those considered parties or defendants in such cases or order the inspection thereof, as necessary."  Jara argues that "ordinary and military courts" refers to Chilean courts and not foreign courts.  Jara further states that in order for foreign orders to fall within the exception, the exequatur procedures established in Articles 242-251 of the Code of Civil Procedure must be followed.

NML again argues that since Article 154 of Chile's General Bank Act was never mentioned in BNA's January 12, 2012 submission, the court should not consider it.  Again, the fact that BNA did not previously argue that Article 154 of Chile's General Bank Act prevented it from complying with this court's order is problematic.  However, even if the court considers the law, BNA does not offer any support for its claim that the exception for court orders only refers to Chilean court orders.  Therefore, this court finds that there is no evidence that Chile's law prohibits BNA from complying with this court's orders to produce responsive documents located in Chile.

**Panama**

BNA's January 12, 2012 letter contained an unsigned opinion from Mario Fabrega who cites Article 89 of the Code of Commerce which states that no authority can order a merchant to provide copies of their books or documents without the issuance of an action ad exhibendum writ.  As NML argues, however, there is no indication of whether banks are within the definition of 'merchant.'[1]  In addition, there is reason to believe that banks are not included within this statute as another statute specifically addresses the confidentiality requirements of financial institutions.  Given that BNA has failed to provide the needed context for this law the court finds that it does not prohibit BNA from producing documents located in Panama.

---

[1] BNA's response claims that the term merchants includes banks, but Fabrega does not make this claim and BNA does not cite any authority for this position.

Fabriga cites Article 29 of Panama's Constitution for the proposition that "[c]orrespondence and other private documents are inviolable and may not be examined or retained, except under orders of authorities with competent jurisdiction and for specific purposes, according to legal formalities." But as the court in First Nat'l Bank of New York held, the Panamanian Constitution does not state that the exception applies only to orders from Panamanian judicial authorities.  271 F.2d at 620.  Furthermore, as in First Nat'l Bank of New York, the party objecting to discovery, here BNA, has not provided any support for such a narrow reading.  This court therefore finds that there is no evidence that Panama's Constitution prevents BNA from producing responsive documents located in Panama.

Finally, Fabrega cites Article 111 of Executive Decree No. 52 dated April 30, 2008 which provides that "[b]anks shall only disclose information about their clients or their transactions under their express consent.  Banks will not need their clients' consent . . . [w]hen the information is requested by competent authorities in accordance with law."  Again, the opinion BNA submitted does not provide any support for its assertion that "competent authorities" is restricted to Panamanian authorities.  This court accordingly finds there is insufficient evidence that Panama's laws prohibit BNA from complying with this court's orders to produce responsive documents.

14

**Paraguay**

BNA's January 12, 2012 letter includes an unsigned letter from Manuel Riera stating that Paraguay's National Constitution Art. 36 "guarantees the inviolability of persons' documentary belongings, which cannot be examined, reproduced, intercepted or seized, except under court order."  Letter from Manuel Riera (December 22, 2011).  There is no indication that a bank is considered "persons" or that BNA can invoke Argentina's constitutional privilege.  See First Nat'l City Bank of N.Y., 271 F.2d at 619.  Furthermore, there is no support for any contention that "under court order" only applies to Paraguay's courts.

According to Riera, the orders of foreign courts can only be executed as provided in treaties entered into with the country of origin, or where the requirements of Art. 532 are satisfied.  But NML is not seeking to have Paraguay's courts execute a judgment, so there is insufficient basis for finding that this procedure would have to be followed in order for BNA to lawfully be required to provide requested documents.

Riera's initial letter also cited Article 84 of Law 861/96 which imposes on financial institutions an obligation of secrecy and prohibits them from disclosing information regarding client transactions.  The Article 86 exceptions include when information is required by "[c]ompetent judiciary authorities under a decision passed in a lawsuit where the involved person is a party."  Once again, BNA's submissions fail to provide support for its argument that

the "competent judiciary authorities" does not include foreign courts.  This court therefore finds there is insufficient evidence that Paraguay's laws prohibit BNA from complying with this court's orders to produce responsive documents.

Foreign Countries Asserted for the First Time

BNA for the first time in its reply submitted on July 13, 2012, argues that Cayman Islands' and Argentina's laws prohibit BNA from complying with the court's order.  Given BNA's already extensive delay in identifying foreign laws that prohibit the requested discovery, BNA's failure to identify the Cayman Island and Argentina until its reply on July 13, 2012 is problematic.  In addition, because the court ordered limited briefing – specifically, responding to the laws identified in BNA's January 2012 – this court could <u>sua</u> <u>sponte</u> strike these additional allegations as beyond the scope of the briefing.

**Cayman Islands**

BNA submits an unsigned opinion from Smeets Law which states that the common law implies a duty on banks not to divulge information about customers' accounts and transactions to third parties.  One exception to this is where disclosure is done under "compulsion of law."  Contrary to BNA's assertion, the court in <u>U.S. v. Chase Manhattan Bank NA</u>, held that the common law exception for disclosure performed under "compulsion of law" encompassed a United States Court order to produce documents in Hong Kong. 584 F. Supp. 1080, 1084 (S.D.N.Y. 1984).

16

Smeets' letter also claims that the Cayman Islands' Confidentiality Law prohibits disclosure.  This law allows disclosure of customers' information in accordance with "any other law."  Again BNA claims that this exception only applies to disclosures permitted by the law of the Cayman Islands.  Once again however, BNA does not provide any support for this interpretation and accordingly they have not satisfied their burden of proof.

**Argentina**

BNA repeats the argument that Argentina's privacy laws prohibit BNA from disclosing the requested information.  BNA originally made this argument in its opposition to the subpoena on February 10, 2011.  However this court issued an order compelling BNA to produce the documents on September 2, 2011.[2]  It therefore appears that this court has previously rejected this argument, and should not consider it again.

Even if the court were to again consider this argument however, it would reject the assertion that Argentina's law prohibits the requested discovery. Argentina's secrecy laws include an exception for disclosures required by a "[j]udge in legal proceedings."  Once again, there is insufficient support for any contention that this exception would not include a court order from this court.

With respect to the countries addressed above, the court holds that there is insufficient evidence to support BNA's contentions that foreign law prohibits

_____

[2] This opinion stated it was denying Argentina's motion to quash the subpoena.  The court therefore never directly addressed BNA's argument in its opinion, but in ordering discovery despite BNA's objections, it implicitly rejected them.

17

disclosure pursuant to an order from this court.  Instead, each country's laws have an exception for disclosures made pursuant to a court order.  The laws' texts provide no basis for holding that the exception applies only to a court order from a country's own court, and BNA provides no further support for this reading.  Accordingly, this court finds that Argentina's laws do not prohibit BNA from complying with this court's orders to produce responsive documents.

**Uruguay**

BNA's January 12, 2012 letter contains an opinion from Diego Sineriz who cites Decree-Law 15332 section 25 which requires that financial intermediation companies protect the confidentiality of their customers.  One exception is when information is disclosed "by reasoned order of a criminal court or of a judge with jurisdiction over the case, in the event of a maintenance obligation, and in any case, subject to the most strict liabilities for damages arising from lack of reasonableness of the application."  NML argues that this exception allows for disclosure in any civil case, but the most reasonable reading is that the only exception for civil cases is for maintenance obligation cases.  See Lex Mundi, Bank Finance and Regulation at 450 (April 2007).  Thus ordering discovery would likely violate Uruguay's bank secrecy laws.  The punishment for violation can involve criminal sanctions on bank employees including three months to three years of prison.  A violator could also receive fines of up to 50% of the minimum net worth and total or partial suspension of activities and revocation of its license.

18

## When the Court Can Order Disclosure Even if Violates Foreign Laws

Even if foreign laws prohibit an entity from producing requested documents, the court can still require such production.  Societe Nationale Industrielle Aerospatiale v. United States Dist. Court, 482 U.S. 522, 544 n.29 (1987).  "A state having jurisdiction to prescribe or enforce a rule of law is not precluded from exercising its jurisdiction *solely* because such exercise requires a person to engage in conduct subjecting him to liability under the law of another state having jurisdiction with respect to that conduct."  United States v. First Nat'l City Bank, 396 F.2d 897, 901 (2d Cir. 1968) (quoting Restatement (Second) Foreign Relations Law of the United States § 39(1) (1965).

This Circuit uses a five-factor test to determine whether to order a party to produce documents when such production would violate a foreign country's laws.  The factors include:

> (i)the importance to the investigation or litigation of the documents or other information requested; (ii) the degree of specificity of the request; (iii) whether the information originated in the United States; (iv) the availability of alternative means of securing the information; and (v) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

Restatement (Third) Foreign Relations Law § 442(1)(c); accord Aerospatiale, 482 U.S. at 544 n.28.  In addition, courts in this Circuit consider the hardship of compliance on the party from whom discovery is sought, and the good faith of

the party objecting to discovery.  <u>Minpeco S.A. v. Conticommodity Servs., Inc.</u>, 116 F.R.D. 517, 523 (S.D.N.Y. 1987).

<u>Importance to the Investigation or Litigation</u>

Courts have found that information regarding a party's assets for purposes of enforcing a judgment is crucial and the importance weighs in favor of compelling disclosure.  <u>See Richmark Corp. v. Timber Falling Consultants</u>, 959 F.2d 1468, 1475 (9th Cir. 1992); <u>accord</u> <u>Gucci America, Inc. v. Curveal Fashion</u>, 09 Civ. 8458, 2010 WL 808639, at *7 (S.D.N.Y. Mar. 8, 2010).

<u>Specificity of Request</u>

Although NML may seek a lot of information, BNA has not maintained specific objections to the discovery request on grounds of its burdensome nature, so it has not made this factor an issue.  <u>See</u> <u>Gucci</u>, 2010 WL 808639, at *6.  Furthermore, the subpoena is tailored to identifying assets to satisfy a judgment, which is sufficiently specific.  <u>See Richmark</u>, 959 F.2d at 1475. Therefore this factor also weighs in favor of ordering disclosure.

<u>Location of Information and Parties</u>

Given that the information at issue is all located in a foreign country, this factor weighs against compelling discovery.  <u>Gucci</u>, 2010 WL 808639 at *6. Thus while this factor weighs in favor of not ordering disclosure, this factor is not determinative.  <u>In re Air Cargo Shipping Services Antitrust Litig.</u>, 2010 WL 2976220, at *3 (E.D.N.Y. July 23, 2010).

Balance of National Interests

The balance of competing interests of the United States and the foreign state is the most important factor in the analysis.  See British Intern Ins. Co. 2000 WL 713057, at *10.   The United States has a vital interest in fully and fairly adjudicating matters before its courts, including the enforcement of its judgments.  See Milliken & Co. v. Bank of China, 758 F.Supp.2d 238, 248 (S.D.N.Y. 2010).  Without the requested discovery plaintiffs are without a remedy and it cannot accordingly be said that the case has been fully and fairly adjudicated.  See Gucci, 2010 WL 808639, at *5.

 The foreign states have an interest in protecting privacy rights which is recognized as substantial.  In re Insurance Antitrust litigation, 938 F.2d 919, 933 (9th Cir. 1991).  However, all of the countries' laws recognize some exceptions to the privacy right for at least certain types of court orders.  Even if BNA is correct that this exception only applies to a country's own court order, compelling production by a United States court order would not be inconsistent with the spirit of the foreign countries' laws.  See Gucci, 2010 WL 808639, at *5.

 Many countries' laws contain significant penalties for violation of the privacy laws - for example, in Uruguay violators face potential prison sentence. This would typically suggest that the countries have a significant interest in the enforcement of these laws.  However, BNA has not provided any information about the likelihood of prosecution, conviction or imposition of a significant

sentence or fine it may face for disclosing pursuant to this court's order.  It is therefore not clear that in this particular case the foreign countries' interests are significant.  Id; British Intern Ins. Co., 2000 WL 713057, at *8 (S.D.N.Y. June 2, 2000).

Finally, there is no evidence that the foreign countries' governments have objected to the disclosure in this case, which the Second Circuit has found "militates against a finding that strong national interests of the foreign country are at stake."  United States v. Davis, 767 F.2d 1025, 1035 (2d Cir. 1985).

For all of these reasons the court finds that the United States' interest in fully and fairly adjudicating the matters before its courts, including enforcing its judgments, outweighs the foreign countries' interest in protecting its banking customers' records.

Availability of alternative means of securing the information

Courts have held that "if the information sought can easily be obtained elsewhere, there is little or no reason to require a party to violate foreign law." Reino De Espana, 2005 WL 1813017, at *9.  BNA makes a conclusory claim that all of the foreign jurisdictions provide alternative means for NML to obtain the discovery it now seeks.  However, BNA provides no details on what such means would be.  In a country such as Uruguay for example, it is not clear that there are alternative means of obtaining the information, given that an exception does not appear to apply even for an order from a local court.  In other countries, according to BNA's statutory reading, the parties would have

to file an action in the foreign countries in order to obtain a local court order. This would require hiring local counsel, possibly significant costs and logistical concerns, and with no clear likelihood of success.  Gucci, 2010 WL 808639, at *5.  The court cannot therefore find that the information is "easily obtained" through alternative means.  This factor therefore supports disclosure.

Hardship to the Party

If a foreign company is likely to face criminal prosecution in a foreign country for complying with a United States court order, that is a weighty excuse for nonproduction.  Soceite Internationale, 357 U.S. at 211.  However, [i]n examining the hardship on the party from whom compliance is sought, courts . . . look at the likelihood that enforcement of the foreign law will be successful."  Minpeco, 116 F.R.D. at 526.  If the likelihood that the party resisting compliance will be prosecuted and convicted is "slight and speculative" a court can order disclosure.  U.S. v. First Nat'l City Bank, 396 F.2d 897, 905 (2d Cir. 1968); accord Gucci America Inc. v. Curveal Fashion, No. 09 Civ. 8458, 2010 WL 808639 at *6 (S.D.N.Y. March 8, 2010).  Courts have required that the party resisting discovery provide information on the likelihood that the party would be prosecuted for producing the requested documents.  Curveal Fashion, 2010 WL 808639 at *7.  Thus in Air Cargo the court ordered discovery where the resisting party cited no instance in which criminal sanctions were ever imposed.  2010 WL 2976220, at *2. Since BNA has not provided any cases where parties in its position have been fined or

23

prosecuted for disclosing under similar circumstances, this factor weighs in favor of compliance.

Good Faith

BNA claims that it has acted in good faith since it produced all that it was able to without violating foreign laws.  However, this court has already determined that BNA has acted in bad faith in failing to present its arguments that foreign law prohibited discovery for over a year and a half.  In Richmark, the court found that defendant had not acted in good faith where it fought disclosure for several months before stating that foreign law presented a problem, and there was no evidence that the defendant attempted to seek a waiver.  959 F.2d at 1475.  This factor therefore again weighs in favor of disclosure.

Overall, upon complete consideration of all of the above factors, the court concludes that compliance with the subpoena is warranted in this case even if it is in violation of foreign countries' laws.

## Conclusion

This opinion resolves the legal questions briefed following the hearing on March 26, 2012.  The court will hold an additional hearing to determine the further steps that need to be taken.

Dated: New York, New York
February 8, 2013

Thomas P. Griesa
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #
DATE FILED: 2/8/13

25