UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

| | | |
|---|---|---|
| NML CAPITAL, LTD., | : | 03 Civ. 8845 (TPG) |
| | : | 05 Civ. 2434 (TPG) |
| | : | 06 Civ. 6466 (TPG) |
| Plaintiff, | : | 07 Civ. 1910 (TPG) |
| | : | 07 Civ. 2690 (TPG) |
| v. | : | 07 Civ. 6563 (TPG) |
| | : | 08 Civ. 2541 (TPG) |
| THE REPUBLIC OF ARGENTINA, | : | 08 Civ. 3302 (TPG) |
| | : | 08 Civ. 6978 (TPG) |
| Defendant. | : | 09 Civ. 1707 (TPG) |
| | : | 09 Civ. 1708 (TPG) |

------------------------------------------------------------ x

| | | |
|---|---|---|
| AURELIUS CAPITAL PARTNERS, LP and | : | |
| AURELIUS CAPITAL MASTER, LTD., | : | 07 Civ. 2715 (TPG) |
| | : | 07 Civ. 11327 (TPG) |
| Plaintiffs, | : | |
| v. | : | |
| THE REPUBLIC OF ARGENTINA, | : | |
| Defendant. | : | |

------------------------------------------------------------ x

| | | |
|---|---|---|
| AURELIUS CAPITAL MASTER, LTD. and | : | |
| ACP MASTER, LTD., | : | 09 Civ. 8757 (TPG) |
| | : | 09 Civ. 10620 (TPG) |
| Plaintiffs, | : | |
| v. | : | |
| THE REPUBLIC OF ARGENTINA, | : | |
| Defendant. | : | **(captions continued on next page)** |

------------------------------------------------------------ x

**MEMORANDUM OF LAW IN SUPPORT OF
<u>THE CITI ENTITIES' MOTION FOR A STAY</u>**

```
------------------------------------------------------------ x
AURELIUS OPPORTUNITIES FUND II, LLC              :
and AURELIUS CAPITAL MASTER, LTD.,               :   10 Civ. 1602 (TPG)
                                                 :   10 Civ. 3507 (TPG)
                        Plaintiffs,              :   10 Civ. 3970 (TPG)
                                                 :   10 Civ. 8339 (TPG)
                 v.                              :
                                                 :
THE REPUBLIC OF ARGENTINA,                       :
                                                 :
                        Defendant.               :
                                                 :
------------------------------------------------------------ x
                                                 :
BLUE ANGEL CAPITAL I LLC,                        :
                                                 :   07 Civ. 2693 (TPG)
                        Plaintiff,               :   10 Civ. 4101 (TPG)
                                                 :   10 Civ. 4782 (TPG)
                 v.                              :
                                                 :
THE REPUBLIC OF ARGENTINA,                       :
                                                 :
                        Defendant.               :
------------------------------------------------------------ x
```

Non-parties Citibank, N.A. ("Citibank"), Citicorp North America Inc., Citicorp USA Inc., Citigroup Global Markets Inc., and Citigroup Inc. (collectively, the "Citi Entities") respectfully submit this Memorandum of Law in support of their motion to stay further production or proceedings pursuant to the order entered by this Court in the above-captioned actions on September 25, 2013 (the "September 25 Order") and the information subpoena dated April 15, 2013 that was served on Citibank by counsel for Plaintiff NML Capital, Ltd. (the "NML Subpoena").

## PRELIMINARY STATEMENT

At enormous burden and expense, the Citi Entities have complied with the September 25 Order, which imposed an unprecedented and complex search obligation on a global set of affiliated entities, over the Citi Entities' objection that discovery of a sovereign's assets outside of the United States is prohibited by the Foreign Sovereign Immunities Act (the "FSIA"). The Citi Entities have also substantially complied with the NML Subpoena, which demanded a search for hundreds of additional names. Yet plaintiffs continue to press for more: one set demands that the Citi Entities conduct additional searches for wire transfer data, and another set challenges the Citi Entities' bases for declining to produce account information from Citibank's branch in Argentina, and to provide information in violation of foreign law.

Never before has such an enormous discovery burden been placed upon third parties, and never in the context of litigation against a sovereign. The Supreme Court has now granted Argentina's petition for *certiorari* to review the propriety under the FSIA of a related discovery order. The Citi Entities respectfully submit that, before they are forced to expend more time and money, all parties should await the Supreme Court's ruling, expected in this term.

## STATEMENT OF FACTS

A.  **The Aurelius Requests**

In December 2011, counsel for Plaintiffs Aurelius Capital Partners, LP, Aurelius Capital Master, Ltd., ACP Master, Ltd., Aurelius Opportunities Fund II, LLC, and Blue Angel Capital I LLC (collectively, "Aurelius") served five extraordinary information subpoenas on the Citi Entities.  The subpoenas demanded worldwide discovery from "Argentina," defined to include a list of names in Spanish and English that, including acronyms embedded in the search demands, named over 1,000 targets.  For each of those over 1,000 entities the subpoenas made more than forty-five separate document demands, many with multiple subparts, with respect to separate categories of transactions or prospective transactions covering a period extending back to January 1, 2009.  "Citibank" was defined to include any Citi Entity in the world.  *See* Declaration of Lindsey T. Knapp, dated March 20, 2014 ("Knapp Decl."), Ex. 1 at Attach. A, Definition No. 11.

The Citi Entities filed objections, including the objection that discovery of offshore sovereign assets was inappropriate.[1]  They then made several efforts to reach agreement with Aurelius on a rational and meaningful search, but Aurelius repeatedly and flatly declined to narrow the scope of its subpoenas.  *See id.* Ex. 2 at 4-7.

On October 10, 2012, Aurelius moved to compel the Citi Entities, as well as the other non-party banks on which Aurelius had served subpoenas, to comply with the subpoenas.  The Citi Entities cross-moved to quash, modify or for a protective order on November 7, 2012.  Aurelius then adjourned the Citi Entities' motion on several occasions and over several months.  *See id.* Exs. 3, 4, 5, and 7.

---

[1] The Citi Entities respectfully refer the Court to their memorandum of law dated November 7, 2012 for a summary of those objections.  *See id.* Ex. 2.

During that period of adjournment, this Court ruled, in response to an earlier motion made by the Republic to quash Aurelius' subpoenas to the non-party banks, that the subpoenas were "not appropriately tailored." *Aurelius Capital Partners v. Republic of Argentina*, No. 07 Civ. 2715, 2013 WL 857730, at *3 (S.D.N.Y. Mar. 7, 2013).  Thereafter, instead of serving new, properly tailored subpoenas, in its reply brief on the cross-motions, filed on May 27, 2013, Aurelius withdrew its original defective subpoenas and asserted broad revised requests, covering the same or similar subject matter, with a modified definition of "Argentina" that now totaled 905 names, slightly less than the earlier number, and made new, objectionable, demands. Because no revised subpoenas were served in accordance with Federal Rule of Civil Procedure 45, the Citi Entities never had the opportunity to object to the revised requests pursuant to Federal Rule of Civil Procedure 45(c)(2)(B) and were deprived of fundamental protections of the Federal Rules of Civil Procedure.

**B.    The September 25 Order**

On September 3, 2013, this Court held a joint hearing on various pending motions to compel and to quash, including Aurelius' motion to compel the Citi Entities and the Citi Entities' cross-motion.  The Court acknowledged that the discovery demanded by Aurelius and other plaintiffs was "wide-ranging" and "most strange."  Sept. 3, 2013 Hr'g Tr. at 30:3, 31:24-25.  The Court nevertheless indicated that it would grant all motions to compel and deny all motions to quash, pending further discussion by the parties.  *Id.* at 44:3-15.  On September 25, 2013, the Court entered the September 25 Order in the exact form proposed by plaintiffs.  Knapp Decl. Ex. 9.

**C.    The Citi Entities' Efforts to Comply with the September 25 Order**

To comply with the September 25 Order, the Citi Entities have engaged in a massive and costly worldwide search and produced to Aurelius a great number of documents, including more

than 35,000 wire transfers resulting from a global search of wire transfer data—the scale of which was unprecedented—for the more than 900 names on Aurelius' revised list of entities. Declaration of Rebecca J. Nelson, dated March 18, 2014 ("Nelson Decl."), ¶ 3.

The Citi Entities also conducted a global search to identify all individual or entity account relationships within the Citi Entities across all business lines and countries.  No centralized database exists, so the search was manual, and involved approximately 450 people, 250 systems, and 100 countries.  *Id.* ¶ 4.  The search excluded accounts located in Argentina because Aurelius stated in its May 27, 2013 reply brief that its revised requests were "not targeted to assets in Argentina," and the Citi Entities have no reason to believe that account documentation in Argentina would reflect any asset held outside of Argentina.  *Id.*  Citibank's branch in Switzerland conducted a search but pursuant to applicable Swiss law is unable to provide information concerning the result.  *Id.*  In addition to the global account search, a search was also conducted for U.S.-domiciled account relationships across all business lines.  *Id.* ¶ 5.

The Citi Entities also conducted global searches for transactional relationships, OTC derivatives, letters of credit, and credit facilities.  *Id.* ¶ 6.  Additionally, employees that would likely be involved in any loans, issuances, or financings by or for the benefit or Argentina were identified and asked to search for responsive information.  *Id.* ¶ 7.

Notwithstanding the Citi Entities' extraordinary efforts to comply with the September 25 Order, and the huge amount of data they have produced to Aurelius, Aurelius demands more.  Specifically, Aurelius demands that the Citi Entities conduct a search of accounts in Argentina and that they disclose, in violation of Swiss law, the results of the search for accounts in Switzerland.  *See* Knapp Decl. Ex. 14.

**D.     The NML Subpoena**

While the briefing with respect to Aurelius' motion to compel and the Citi Entities' cross-motion was ongoing, counsel for Plaintiff NML Capital, Ltd. ("NML") served an information subpoena, dated April 15, 2013, on Citibank.  The NML Subpoena sought, *inter alia*, wire transfer data for a list of 392 entities included in NML's definition of "Argentina."  *See* Knapp Decl. Ex. 6 at Attach. B.  According to NML, 72 percent of the entities included in its definition are also included in Aurelius' modified definition.  *See id.* Ex. 12 (listing 111 entities included in NML's definition of Argentina that are purportedly not on Aurelius' list).

Citibank conferred several times with NML to try to reach agreement on the scope of a reasonable search in response to the NML Subpoena.  In June and early July 2013, NML suggested that it develop a search protocol for Citibank to consider, which Citibank agreed to do.  On July 15, 2013, NML's counsel stated that he would "be back to [Citibank] soon" regarding NML's proposal.  *Id.* Ex. 8.  NML did not, however, send its proposed search protocol to Citibank until December 2013.  *See id.* Ex. 10.

Shortly after sending its proposed search protocol to Citibank, NML served another subpoena on Citibank and the other Citi Entities.  NML's second subpoena (the "Me Too Subpoena") sought copies of everything produced by the Citi Entities to Aurelius pursuant to the September 25 Order.  *See id.* Ex. 11.  The Citi Entities have fully complied with the Me Too Subpoena.  Thus, pursuant to the Me Too Subpoena, the Citi Entities have produced to NML the more than 35,000 wire transfers that they have also produced to Aurelius.  *See* Nelson Decl. ¶ 8.

Because there is significant overlap between the wire transfer data demanded by the NML Subpoena and the wire transfer data demanded by Aurelius, Citibank has substantially complied with the NML Subpoena through the Citi Entities' compliance with the Me Too Subpoena.  Nevertheless, NML demands that Citibank conduct a wire transfer search for the

remaining 111 entities included in its definition of "Argentina" that are purportedly not included in Aurelius' definition. *See* Knapp Decl. Exs. 12, 13. Approximately half of those remaining 111 entities are not alleged by NML to be governmental entities, but are rather entities in which Argentina purportedly has an ownership interest. *See id.* Ex. 12.

E.  **The Case Pending Before the Supreme Court**

Meanwhile, Argentina was challenging NML's motion to compel two other third party banks to comply with subpoenas that were substantially similar in nature to, though less burdensome than, the NML Subpoena and the Aurelius revised requests. One of the NML subpoenas in that case, for example, defined the Republic to include 225 entities, compared to the 905 names on Aurelius' revised list. Brief for Petitioner, *Republic of Argentina v. NML Capital, Ltd.*, No. 12-842, 2014 WL 768310, at *15 (Feb. 24, 2014). Argentina protested that discovery of assets outside of the United States was not permitted under the FSIA. This Court's September 2, 2011 order compelling production was affirmed by the Court of Appeals in an August 20, 2012 decision captioned *EM Ltd. v. Republic of Argentina,* 695 F.3d 201 (2d Cir. 2012). On January 10, 2014, the Supreme Court granted the Republic's petition for a writ of *certiorari* to review the Second Circuit's decision. *Republic of Argentina v. NML Capital, Ltd.*, 134 S.Ct. 895 (2014).

The question presented in the petition granted by the Supreme Court is:

> Whether post-judgment discovery in aid of enforcing a judgment against a foreign state can be ordered with respect to all assets of a foreign state regardless of their location or use, as held by the Second Circuit, or is limited to assets located in the United States that are potentially subject to execution under the FSIA, as held by the Seventh, Fifth, and Ninth Circuits.

Brief for Petitioner, *Republic of Argentina v. NML Capital, Ltd.*, No. 12-842, 2014 WL 768310, at *i (Feb. 24, 2014).  The United States, in an *amicus* brief in support of reversal of the decision of the Court of Appeals, stated:

> [A] district court's authority to order discovery into the property of a foreign state is necessarily limited, and extends only to assets as to which there is a reasonable basis to believe that an exception to execution immunity under the FSIA applies.  Broad, general discovery into presumptively immune foreign-state property would impose the very costs and burdens that the immunity is intended to shield against in the first place.  Discovery therefore must be restricted to the facts necessary to verify that assets fall within the scope of such an exception - exactly the kind of tailoring that courts undertake in various other immunity contexts, including qualified immunity cases.  A court has jurisdiction over a foreign state in the first place only because a FSIA exception applies, and the FSIA and its exceptions therefore define the scope of the inquiry in which that court can engage.

Brief for the United States as Amicus Curiae in Support of Petitioner, *Republic of Argentina v. NML Capital, Ltd.*, No. 12-842, 2014 WL 827994, at *9-10 (Mar. 3, 2014).

## ARGUMENT

In light of the Supreme Court's forthcoming decision, the Citi Entities respectfully request a stay of any further production or proceedings pursuant to the September 25 Order and the NML Subpoena.

A district court has "broad discretion" in determining whether to stay proceedings. *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (citation omitted).  "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

A stay is particularly appropriate, and frequently granted, when the Supreme Court is close to settling an issue of law that will bear on the action.  *See Marshel v. AFW Fabric Corp.*,

552 F.2d 471, 472 (2d Cir. 1977) (instructing district court to stay further proceedings pending a Supreme Court decision in a closely related case which was likely to determine the question of liability); *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012) (granting stay pending Supreme Court's decision and explaining that "a court may . . . properly exercise its staying power when a higher court is close to settling an important issue of law bearing on the action"); *Estate of Heiser v. Deutsche Bank Trust Co. Ams.*, No. 11 Civ. 1608 (AJN)(MHD), 2012 U.S. Dist. LEXIS 96817, at *14-15 (S.D.N.Y. July 10, 2012) ("When a similar action is pending in another court and where a higher court is close to settling an issue of law bearing on the action a stay is proper."); *Wing Shing Prods. (BVI) Ltd. v. Simatelex Manufactory Co.*, No. 01 Civ. 1044 (RJH)(HBP), 2005 U.S. Dist. LEXIS 6780 (S.D.N.Y. Apr. 18, 2005) ("Although courts award stays in a wide variety of circumstances, they often do so when a higher court is close to settling an important issue of law bearing on the action."); *In re Literary Works in Elec. Databases Copyright Litig.*, No. M-21-90 (GBD), 2001 U.S. Dist. LEXIS 2047, at *5 (S.D.N.Y. Feb. 27, 2001) (granting stay pending a decision by the Supreme Court and explaining that "[a] court may properly exercise this power when a higher court is close to settling an important issue of law bearing on the action"); *Jugmohan v. Zola*, No. 98 Civ. 1509 (DAB), 2000 U.S. Dist. LEXIS 1910, at *13 (S.D.N.Y. Feb. 24, 2000) ("Postponing the final disposition of a case pending an upcoming decision by the United States Supreme Court is a practice exercised by the Second Circuit in the interest of judicial economy.").

The Supreme Court's decision in *Republic of Argentina v. NML Capital, Ltd.*, No. 12-842, is expected to be issued by the end of June. If the Supreme Court rules that all of this discovery is inappropriate, the huge effort expended by the Citi Entities will have been for no valid purpose. Forcing the Citi Entities to do more, while the Supreme Court considers the issue,

is therefore inappropriate and "an inefficient use of time and resources of the [C]ourt and the parties." *Sikhs for Justice*, 893 F. Supp. 2d at 622 (quoting *In re Literary Works*, 2001 U.S. Dist. LEXIS 2047, at *8).  Nor can Aurelius and NML claim prejudice, as they have each been responsible for longer delays.  More fundamentally, the Citi Entities have already complied with the September 25 Order, at huge cost and burden, and the Citi Entities have already produced to NML, pursuant to its Me Too Subpoena, wire transfer data for 281 entities on NML's list.  Citibank should not be required to conduct any further searches or provide any further information in response to Aurelius' revised requests or the NML Subpoena until the Supreme Court determines the propriety of the plaintiffs' discovery demands.

## CONCLUSION

For the foregoing reasons, the Citi Entities' motion to stay further production or proceedings pursuant to the September 25 Order and the NML Subpoena should be granted.

Dated:   New York, New York
         March 20, 2014

>                       DAVIS POLK & WARDWELL LLP
>
>                       By:   /s/ Karen E. Wagner
>                             Karen E. Wagner
>                             James L. Kerr
>                             Lindsey T. Knapp
>
>                             450 Lexington Avenue
>                             New York, New York  10017
>                             Telephone:   (212) 450-4000
>                             Facsimile:   (212) 701-5800
>
>                             *Counsel to Non-Parties Citibank, N.A.,*
>                             *Citicorp North America Inc., Citicorp*
>                             *USA Inc., Citigroup Global Markets*
>                             *Inc., and Citigroup Inc.*